**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

RYAN WESLEY WILDER

                        )
       PLAINTIFF   )
                        )

    V.                  )    CASE NO. 4:18-cv-344-KGB
                              Hon. Kristine G. Baker

CREDIT CONTROL COMPANY, INC., )
                        )
      DEFENDANT   )

## Statement of Material Facts Not in Dispute

For the purposes of the accompanying Motion for Summary Judgment, the following are material facts not in dispute:

1. Ryan Wesley Wilder (Wilder or Plaintiff) is an adult resident of the State of Arkansas and is a consumer within the meaning of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.*

2. Credit Control Company, Inc. (CCC or Defendant) is a debt collection agency within the meaning of the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692, *et seq* and the Arkansas Fair Debt Collection Practices Act ("AFDCPA"), Ark. Code Ann. § 17-24-501, *et seq*

3. Little Rock Ambulance Authority dba MEMS (MEMS) is a municipal ambulance and emergency medical services organization operating in the Central Arkansas area including but not limited to Pulaski County, Arkansas pursuant to Arkansas Code Ann. § 14-137-108 and Little Rock City Code § 5-26 et seq. - Ordinance No. 14,062.

4. MEMS engages CCC to collect delinquent accounts for ambulance and emergency medical services. Deposition of C.D. Hanson at 48 (hereinafter "CDH Dep. at __").

5. On September 1, 2015 Wilder received ambulance and emergency medical services from MEMS. Ex. 1 (MEMS Trip Detail Run No. 68,475); Wilder Deposition at 17 (hereinafter "RWW Dep. at _"). A final invoice was sent to Wilder on October 30, 2015. *Id.* No insurance payment was received for this run and no other payment was made by Wilder. RWW Dep. at 18-19.

6. On April 3, 2016 MEMS electronically forwarded the unpaid balance for these services to CCC to initiate collection efforts. See Ex. 2 (CCC Account file 7970983, MEMS Client Ref # 15-68475). The client reference number is the last two digits of the year of service followed by the MEMS run number for that service. CCC assigned an internal account number of 70983 to this matter.

7. On December 19, 2016 Wilder received ambulance and emergency medical services from MEMS. A final invoice was sent to Wilder by MEMS on February 10, 2017. Ex. 3 (MEMS Trip Detail Run No. 93,778).  RWW Dep. at 19.

8. On December 20, 2017, Wilder again received ambulance and emergency services from MEMS. Ex. 4 (MEMS Trip Detail Run No. 94,095). RWW Dep. at 21.  On January 24, 2017 MEMS received an insurance payment that paid part of the cost of this run. *Id.*

9. On or about May 21, 2017, MEMS electronically forwarded the unpaid balances for the December 2016 services to CCC to initiate collection and copied the electronic transmission of the 2015 services originally forwarded April 3, 2016.

This included the $888.75 amount for run 16-93778. See Ex. 5 (MEMS electronic transmission and CDH Dep. at 40.)

10. The 12.19.2016 services with MEMS client reference number 16-93778 was assigned CCC account file 8001750 by CCC. Ex. 6.

11. The 12.20.2016 services with MEMS client reference number 16-94095 was assigned CCC account file 8001798. Ex.7.

12. The information communicated by MEMS contained an erroneous Social Security Number beginning 151 as opposed to Wilder's correct SSN beginning 589. As a result, CCC did not associate that claim with the other two claims. See CDH Dep. at 44-45, 88-89.

13. Debt information is electronically forwarded by MEMS to CCC where CCC's system electronically enters it into its collection database. There is no human activity involved in this process. CDH Dep. at 39. Thus, CCC was not involved in entering an incorrect SSN for the 12. 20.2016 services. CDH Dep. at 45.

14. CCC uses the Collector System from Columbia Ultimate Business Systems (CUBS) to receive and store all the information for its collection accounts. All information is entered into this system including the contemporaneous notes of conversations with debtors, information received, and actions taken. See Ex. 6 (CUBS printout for 8001750/ref. no. 16-93778); CDH Dep. at 41-45).

15. On May 24, 2017 CCC's collector Carol, listed as CLZ on its internal note system, contacted Wilder telephonically regarding MEMS account 8001750. The conversation was cordial. RWW Depo. at 26. Carol properly identified herself and, during the conversation, Wilder informed her he had health insurance but

did not know his membership number. He later called back and gave her his membership information which Carol forwarded to MEMS on May 25, 2017. See Ex. 8 (CUBS printout); CDH Dep. 43, 60-61.

16. On May 25, 2017 a validation letter was sent to Wilder by CCC stating "RE: MEMS AMBULANCE 16-93778", stating the principal due of $888.75, stating CCC was a debt collector and this was an effort to collect a debt and setting forth Wilder's rights as required by the FDCPA. Ex. 8 (5.25.2017 letter from CCC).

17. Payment $479.74 was received by MEMS from Wilder's health insurer on or about June 16, 2017. Ex. 3 (MEMS Trip Detail Run No. 93,778).

18. On June 26, 2017, CCC sent Wilder a letter updating the amount owed to reflect the June 16 payment. Ex. 9 (6.26.2017 letter from CCC to Wilder).

19. On July 21, 2017, Carol called Wilder at 10:00 AM and asked to speak to "Ryan". CDH Dep. at 67-68; RWW Dep. at 34. Wilder acknowledges that he had been waiting for her to call. *Id.* at 40. Wilder's version of this call is that he had been working until 2:00 AM and was awakened by Carol's call. He states that he answered the call but was silent other than possibly grunting. *Id.* When he said nothing, the caller said words to the effect of, "That's ok. We'll be seeing you soon" and hung up. *Id.* Wilder characterizes this language as a threat. *Id.* at 35.

20. Wilder then called Carol. He admits he "was not happy" and "then I was hot." RWW Dep. at 36. He also admits it was likely he used profanity. RWW Dep. at 36, 42, and "maybe I could have behaved a little bit better and like used less profanities… But, yeah, I just wasn't happy." *Id.* at 43. The person responded,

"I'm not going to let you talk to me like that" and "Once you've calmed down and you're ready to pay, then you call back." *Id.* She then hung up. *Id.*

21. Wilder then called back again and was directed to C.D. Hanson, operations manager of CCC. CDH Dep. at 26, 43. He expressed his anger at Carol and his perception of disrespect. RWW Dep. at 43-44. He admits he used profanity toward Hanson and that Hanson stated "Oh, I'm not going to let you talk to my employees like that." *Id.* Hanson then volunteered to place Wilder in "do not contact" status so that there would be no further contact initiated by CCC. *Id.* at 46, 51. After that, he received no more calls initiated by CCC. *Id.* at 47.

22. On July 24, 2017, Wilder called and spoke to Carol who told him he had to pay in full or "we're done here." RWW Dep. at 45. This was his last contact with CCC. *Id.* at 46-47.

23. Wilder has abandoned his claims under 15 U.S.C. §§1692e(8) and 1692e(11) and Ark. Code Ann. §§17-24-506(b)(8) and 17-24-506(b)(11). Ex. 10 (3.15.2019 email from Mr. McGaha).

24. When CCC was first founded in 1972, it adopted policies which would later compare favorably to the FDCPA when the latter was enacted. CDH Dep. at 31, 35-36; Ex. 11 (Ironclad Rules).

Respectfully submitted,

 */s/ Stephen W. Jones*
Stephen W. Jones, AR Bar No. 78083
JACK NELSON JONES, P.A.
Attorneys for Defendant
Riverfront Plaza
1 Allied Drive, Bldg. 1
Suite 1110
Little Rock, Arkansas 72202
501-707-5520
sjones@jacknelsonjones.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2019, a copy of the foregoing was filed electronically using the Court's CM/ECF system and served in accordance with the Federal Rules of Civil Procedure. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.

*/s/ Stephen W. Jones*
Stephen W. Jones